## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Amber McClair,                              :

           Plaintiff,               :     Case No. 3:11-CV-01313

      v.                                :     Judge Zouhary

AFSCME Local #2415, et al.,                 :     Magistrate Judge Armstrong

           Defendants.              :

### Magistrate's Report and Recommendation

This cause is presently before this Court on two related motions to Dismiss Plaintiff's Amended Complaint filed by Defendants Harman and O'Connell and by Defendant American Federation of State, County and Municipal Employees, Local 2415, AFL-CIO [AFSCME] (Docket Nos. 16 & 17).  By Order of June 30, 2011, District Judge Jack Zouhary referred this matter to the undersigned for general pretrial supervision.  (Docket No. 3, non-document)

For the reasons set forth below the undersigned recommends that Defendants' Motions to Dismiss Plaintiff's Amended Complaint (Docket Nos. 16 and 17) be Granted and that Plaintiff's Amended Complaint be Dismissed

1

## I.  Procedural Background

On June 27, 2011, Plaintiff Amber McClair filed a Complaint with jury demand against The University of Toledo Medical College of Ohio [UTMCO] and Defendant AFSCME Local #2415. alleging, inter alia, workplace discrimination against her former employer UTMCO and failure to provide fair and adequate representation against Defendant AFSCME, the union to which Plaintiff belonged at or around the time of her employment with UTMCO. (Docket No. 1)

On August 1, 2011, UTMCO filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Plaintiff's Complaint asserted claims under 42 U.S.C. § 1981 and Ohio Revised Code § 4112.01 et seq. and that sovereign immunity barred Plaintiff's § 1981 claim and that the Eleventh Amendment to the Constitution barred her state law claims under Chapter 4112 of the Ohio Revised Code.  (Docket No. 7).

On September 7, 2011, UTMCO filed its Reply (designated on the docket as a Response) in Support of its Motion to Dismiss, noting that Plaintiff's Response to Defendant University's Motion to Dismiss was due for filing on August 31, 2011.  (Docket No. 8).

On September 10, 2011, Plaintiff filed an Amended Complaint against AFSCME Local #2415 and added two new individuals, Catherine Harman (identified in the Amended Complaint as "Harmon") and Cindy O'Connell, as Defendants.  Plaintiff did not, however, name UTMCO as a Defendant in her Amended Complaint.  (Docket No. 9).

On October 27, 2011, the undersigned issued an Order that, inter alia,  granted UTMCO's Motion to Dismiss on the basis that UTMCO had neither been named as a party in, nor served with process as to, Plaintiff's Amended Complaint.  (Docket No. 11).

On December 1, 2011, Defendants Harman and O'Connell jointly filed their Motion to

Dismiss. (Docket No. 16). On December 5, 2011, Defendant AFSCME also filed a Motion to

Dismiss Amended Complaint. (Docket No. 17).

On December 19, 2011, Plaintiff filed a Motion Opposing Dismissal (Docket No. 19).[1]

On January 4, 2012 Defendants Harman and O'Connell filed a Reply. (Docket No. 20).

## II.  Jurisdictional Claims and Alleged Violations of Law

Plaintiff states that this Court has jurisdiction in this matter pursuant to 28 U.S.C. §§

1331, 1337, 1343(4), 2201 and 2202 as to her claim brought under 42 U.S.C. § 1981, which

Plaintiff characterizes as providing for declaratory and injunctive relief against discrimination in

employment on the basis of sex and race.

Plaintiff also asserts that this Court has supplemental jurisdiction to hear claims brought

pursuant to Chapter 4112.01 et seq. of the Ohio Revised Code as well as the common law of the

State of Ohio.

Plaintiff also brings her action pursuant to § 301 of the Labor Management Relations

Act, 29 U.S.C. 185, et seq., [LMRA] pertaining, generally, to suits by and against labor

organizations and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, et

seq., [LMRDA] pertaining, generaly, to participation of union members in the affairs of a union.


### B.  Alleged Facts

Plaintiff's Amended Complaint sets forth the following assertions of fact in support of

her claims as against Defendants Harman and O'Connell:

---

[1] While not specifically designated as such, it appears that Plaintiff's Motion Opposing
Dismissal is directed at challenging only the Motion to Dismiss of Defendants Harman and
O'Connell.

3

Plaintiff is a black, female, United States citizen.  She was employed by "Defendant entity" (presumably former Defendant, UTMCO) as a data processing number 3 clerk.  Defendants Harman and O'Connell were/are employed in a supervisory capacity at UTMCO.  UTMCO is a state university with a medical college and hospital component.

On or about October 17, 2008, UTMCO hired Plaintiff as a data processing number 3 clerk.  Plaintiff performed her work.  Plaintiff experienced a work environment that was at times contentious due to matters arising from co-workers and Defendants Harman and O'Connell.  On or about September 10, 2009, Plaintiff requested a change of workstation due to the contentious work environment.  On or about September 26, 2009, the requested change of workstation was accomplished.

Defendant Harman took exception to and was offended by Plaintiff's changed workstation.  A confrontation ensued between Plaintiff and Defendant Harman during which  Harman physically, verbally and emotionally assaulted Plaintiff and caused Plaintiff to suffer emotionally and mentally and to obtain medical treatment.   To eliminate Plaintiff from the workplace,  Defendant Harman plotted to have Plaintiff informed that her job at UTMCO had been or would be abolished.

Plaintiff lost her position at UTMCO and was placed on an on call status for one year.  Plaintiff accepted that her job was abolished.  Plaintiff was not given the opportunity to "bump" other UTMCO employees and  thereby regain employment at UTMCO and was not given assistance to find other employment at UTMCO.

On or about November 25, 2009, Plaintiff determined that her former job had not been abolished and that a white female was now performing the duties Plaintiff had previously performed as a data processor number 3, but with the designation of Account Clerk III for greater compensation.  Thereupon, Plaintiff attempted to reacquire her position, but was informed that, if she entered the campus premises of UTMCO, she would be arrested.

Plaintiff's race was a factor in Plaintiff's being denied a chance to return to work.

 Defendants Harman and O'Connell in their individual and supervisory capacities worked against Plaintiff when Plaintiff complained to her union about these matters.  Due to her complaining to her union, Plaintiff experienced increased job aggravation from/by Defendants Harman and O'Connell.  Defendants Harman and O'Connell, motivated by the intention that Plaintiff would either retaliate or quit as a result, redoubled their efforts against Plaintiff.  Plaintiff suffered various injuries as a result of the matters recounted herein.

4

Plaintiff's Amended Complaint sets forth the following assertions of fact in support of her claims as against Defendant AFSCME:

> Plaintiff has paid and Defendant AFSCME has received union dues, Plaintiff was current on her union dues and was a member in good standing with the union at all times relevant to the matters set forth in her Complaint.  Defendant AFSCME promised to provide representation to members who present grievances and that Plaintiff presented her grievances regarding her treatment at by former employer UTMCO to the union.

> Defendant AFSCME failed to provide adequate representation, advocacy, protection or relief to Plaintiff regarding her grievances against UTMCO. Defendant AFSCME breached its duty of fair representation owed to Plaintiff and, as a direct and proximate result thereof, Plaintiff lost her job with UTMCO and suffered economic and non-economic loss.

## III.  Standard of Review

All Defendants seek dismissal of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and/or Fed. R. Civ. P. 12(b)(6).

Rule 12 of the Federal Rules of Civil Procedure provides in pertinent part:

> Rule 12.  Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing.
> . . .
>> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>>
>>> (1) lack of subject-matter jurisdiction;
>>> . . .
>>>
>>> (6) failure to state a claim upon which relief can be granted; . . .

Rule 12(b)1 and (b)(6), Federal Rules of Civil Procedure.

### A.  Motions Under Rule 12(b)(1)

5

Where a defendant puts forward a subject matter jurisdiction challenge pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction.  Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990) (citing Rogers v. Stratton Industries, Inc., 798 F.2d 913, 915 (6th Cir. 1986)).  However, as explained by the court in Musson Theatrical Inc. v. Federal Express Corp., 89 F.3d 1244 (6th Cir. 1996):

> The plaintiff's burden to prove federal question subject matter jurisdiction is not onerous. The plaintiff must show only that the complaint alleges a claim under federal law, and that the claim is 'substantial.' A federal claim is substantial unless 'prior decisions inescapably render [it] frivolous.' In short, when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made.

Id. at 1248 (internal citations omitted).

Motions to dismiss based on Federal Rule of Civil Procedure 12(b)(1), subject matter jurisdiction, present, generally,  in two versions: (1) a facial attack on subject matter jurisdiction; and (2) a factual attack on subject matter jurisdiction. See Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990) (identifying the two types of 12(b)(1) motions to dismiss).

> Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A facial attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. . . . .   A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). (citations omitted).

A facial attack on subject matter jurisdiction "merely question[s] the sufficiency of the

6

pleading." Id.  Facial attacks on subject matter jurisdiction are reviewed with the same standard as a failure to state a claim, 12(b)(6), motion to dismiss. Id.

By contrast when evaluating a factual attack on subject matter jurisdiction, the reviewing court "must . . . weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." Id.  See Nat'l Assoc. of Minority Contractors v. Martinez, 248 F. Supp.2d 679, 681 (S.D. Ohio 2002).  See also Moore v. Pielech, 2011 U.S. Dist. LEXIS 97098, *4-*5 (S.D. Ohio, E.D., August 30, 2011).

**B.  Motions Under Rule 12(b)(6)**

The standard for reviewing a complaint subject to a motion to dismiss challenge under Rule 12(b)(6), failure to state a claim upon which relief may be granted, requires that the court determine if the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) (clarifying the "plausibility" standard articulated in Twombly).

The "plausibility" standard, as articulated in Ashcroft v. Iqbal, provides that  "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  Under this standard, the fact claims made in the contested pleading "must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555. (emphasis added).  "The court must 'accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the Plaintiff [].'" Louisville/Jefferson County Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 384 (6th Cir. 2009) (omission in original) (citing Gunasekera v.

Irwin, 551 F.3d 461, 466 (6th Cir. 2009)).[2]

## IV.  Law and Analysis

### A.  Preliminary Analytical Considerations

Having examined Plaintiff's Amended Complaint, this Court construes Plaintiff's claims against Defendants Harman and O'Connell as arising out of alleged violations of  42 U.S.C. § 1981 and Chapter 4112 of the Ohio Revised Code and against Defendant AFSCME as arising out of alleged violations of § 301 of the Labor Management Relations Act, 29 U.S.C. 185, et seq. and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, et seq.  For reasons discussed, below, this Court construes Plaintiff's Amended Complaint as not asserting either a 42 U.S.C. § 1981 claim or a Chapter 4112 of the Ohio Revised Code as against Defendant AFSCME.

This Court first considers Defendants' arguments under Rule 12(b)(1).  Defendants' Rule 12(b)(6) challenges will, of course,  become moot if the Court lacks jurisdiction. See Moir, supra, 895 F.2d at 269 (citing  Bell v. Hood, 327 U.S. 678, 682, 66 S. Ct. 773, 90 L. Ed. 939 (1946)).

### B.  Rule 12(b)(1): Validity of Pleading as to Subject Matter Jurisdiction

As set forth in her Amended Complaint Plaintiff asserts various bases for establishing this Court's  jurisdiction over the claims for relief that she raises.

---

[2]     As a matter of historical note,  Twombly reconstructed the previous Rule 12(b)(6), standard as set forth in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), which espoused "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 563.  In Twombly the Supreme Court stated that the Conley formulation of the 12(b)(6) pleading requirement (i.e. beyond a doubt that the plaintiff can prove no set of facts) as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Id.  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).

### 1.  28 U.S.C. §§ 1331, 1337 and 1343

28 U.S.C. §1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1337 provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . ."

28 U.S.C. § 1343 provides that "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person."  Id.  "Section 1343 provides that 'district courts shall have original jurisdiction' over civil actions regarding acts of Congress protecting civil rights."   EEOC v. FPM Group, Ltd., 657 F. Supp.2d 957, 962 (E.D. Tenn. 2009).

### 2.  28 U.S.C. §§ 2201 and 2202

28 U.S.C. §§ 2201 and 2202, Declaratory Judgments, provide that "[1]n a case of actual controversy within its jurisdiction . . .  any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

However, the Declaratory Judgment Act only extends the jurisdiction of the federal court; and subject matter jurisdiction must first be proper under 28 U.S.C. § 1331, federal question, or 28 U.S.C. § 1332, diversity of citizenship. Secura Ins. Co. v Gray Constr., Inc., 661 F Supp 2d 721. (W.D. Ky. 2009) "[I]t is axiomatic that this statute [Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202] merely provides a procedural remedy, rather than being an independent basis for the exercise of such jurisdiction." (citing, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72, 70 S. Ct. 876, 94 L. Ed. 1194 (1950); Toledo v. Jackson, 485 F.3d 836, 839 (6th Cir.

9

2007)."  Boakye v. Hansen, 554 F. Supp. 2d 784, 787 (S.D. Ohio 2008)).

Thus 28 U.S.C. §§ 2201 and 2202 provide Plaintiff with no independent basis for subject

matter jurisdiction in this case.

### 3.  Labor Management Relations Act § 301, 29 U.S.C. § 185

29 U.S.C. § 185, et seq. (otherwise known as § 301 of the Labor Management Relations

Act) [LMRA] provides for suits by and against labor organizations.  29 U.S.C. § 185(c) of the

LMRA delineates its jurisdictional mandate, stating that, as to actions by or against a labor

organization brought under the LMRA,  the district courts have jurisdiction.  However, 29 U.S.C.

§ 185 is inapposite in the current context and does not support this Court's jurisdiction because

the LMRA does not apply to public sector employee unions.

Under the LMRA "[t]he term 'employer' …shall not include … any State or its political

subdivisions." 29 U.S.C. § 152(2).  It follows then that since UTMCO  is a state educational,

hospital and medical training institution and, thus, an arm of the State of Ohio UTMCO cannot be

an "employer" under the Act.  Accordingly, Plaintiff cannot be an "employee" covered by the

Act.  Additionally, Defendant AFSCME is not a labor organization subject to the Act.  See Moir,

supra, 895 F.2d at 272 (6th Cir. 1990) (holding, inter alia,  that federal courts do not have

jurisdiction over claims of violations of federal labor laws brought by employees of a political

subdivision.)  See Cottrill v. Ohio Civil Service Employees Ass'n., 665 F. Supp. 525

(N.D.Ohio,1987)  See also Richards v. Ohio Civil Service Employees Ass'n, 205 Fed. Appx. 347,

2006 U.S. App. LEXIS 25616, 2006 WL 2918862 (6th Cir. 2006) (holding that the LMRA does

not cover public employee claims even though the employees' local union represents both public

and private employees).  . See also  Bain v. City of Farmington, 2007 U.S. Dist. LEXIS 22765,

*7-*8, *10-*11 (E.D. Mich, S.D., March 28, 2007) (holding that former employee of municipality in suit, brought under the LMRA, against municipality for breach of labor agreement  and AFSCME for failure to fairly represent was <u>barred for lack of subject matter jurisdiction</u>).

Accordingly, Plaintiff's claims as against Defendant AFSCME brought under the LMRA fail for lack of subject matter jurisdiction.

### 4.  Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401

29 U.S.C. § 401 (otherwise known as the Labor Management Reporting and Disclosure Act or the "Landrum-Griffin Act") [LMRDA] provides, in part, that labor organizations and their officials are to adhere to the highest standards of responsibility and ethical conduct in administration of the affairs of labor unions, are to assure that the union shall be responsive to its membership and are to protect individual union members.  The LMRDA has as its primary goal "that unions [are] democratically governed and responsive to the will of their memberships," <u>Reed v. United Transportation Union</u>, 488 U.S. 319, 325, 109 S. Ct. 621, 102 L. Ed. 2d 665 (1989),

Just as  29 U.S.C. § 152(2) defines "employer" for the purposes of the LMRA, 29 U.S.C. § 402(e) defines the meaning of "employer" under the LMRDA.

> "Employer" means any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee <u>but does not include</u> the United States or any corporation wholly owned by the Government of the United States <u>or any State or political subdivision thereof.</u>

29 U.S.C. § 402(e) (emphasis added).

11

While the definitions of "employer" in § 152(2) and § 402(e) differ in certain respects, what both definitions have in common is the exclusion of, inter alia, "any State or political subdivision thereof."

Thus, as it is defined in § 402(e), the LMRDA excludes and state or political subdivision thereof from the ambit of protections afforded under the Act.  This exclusion extends to labor organizations as well.

> The Act [LMRDA] in fact states that the term "employer" does not include the United States or any corporation wholly owned by  the Government of the United States or any State or political subdivision thereof. 29 U.S.C. § 402(e).  The Act's definitions of "employee" and "labor organization" rely on the definition of "employer," so that unions representing only public sector workers are not "labor organizations." See 29 U.S.C. §§ 402(f) and (i). Thus it is clear that for purposes of the LMRDA the trusteed Local 512 is not a "labor organization" because it represents only State of Michigan workers.

Smith v. Office & Professional Employees International Union, 821 F.2d 355, 355-56 (6th Cir. 1987). (emphasis added) (the issue examined by the Sixth Circuit in Smith was whether a trusteeship imposed on plaintiff employees' local union by defendant parent union was excluded under the LMRDA, finding that the trusteeship was a "subordinate body" and that such term was interchangeable with "labor organization" and "subordinate labor organization," holding that public employee unions were not covered by the phrase "subordinate body" in §§ 302 and 304 of the Act due to the exclusion of public employee unions from coverage in all other titles of the Act and the interchangeable use of the terms in Title III of the Act).

Therefore, as with Plaintiff's claims under the LMRA, Plaintiff's claims under the LMRDA are barred for lack of subject matter jurisdiction because public employee unions are not

covered under the ACT.[3]  (See <u>Bain v. City of Farmington</u>, 2007 U.S. Dist. LEXIS 22765 at *7-*8 and *10-*11, <u>supra</u>, for rationale supporting finding of no subject matter jurisdiction as to either municipality or public employee union under LMRA based on states and subdivision express exclusion from coverage under the Act.).

Thus neither the LMRA nor the LMRDA provide Plaintiff with subject matter jurisdiction as to her claims against Defendant AFSCME.

### 5.  Jurisdiction Through 42 U.S.C. § 1981

Therefore, based on the foregoing, if this Court has the authority to exercise jurisdiction over this case in the first instance,  it may do so only where Plaintiff has asserted a claim that arises under the Constitution, laws or treaties of the United States (§ 1331), an act of Congress pertaining to trade, commerce, monopolies (§ 1337) or  acts of Congress protecting civil rights (§ 1343).

As this Court has already resolved the issues of Plaintiff's claims against Defendant AFSCME under 29 U.S.C. 185, <u>et</u> <u>seq</u>. and 29 U.S.C. § 401, <u>et</u> <u>seq</u>. and determined that it lacks subject matter jurisdiction over these claims, what remains to be determined is whether this Court

---

[3]        "While the mixed union exception flows logically from the underpinnings of the LMRDA, which specifically regulates union/member relationships and had as its main goal to ensure "that unions [are] democratically governed and responsive to the will of their memberships," . . . the same exception has no application to the prior-enacted LMRA, whose emphasis is the union's relationship with its employer,   not its individual members."

<u>Richards v. Ohio Civ. Serv. Emples. Ass'n</u>, <u>supra</u>, 2006 U.S. App. LEXIS 25616, at *18-*19.

has jurisdiction over Plaintiff's  42 U.S.C. §1981 and/or R.C. Chapter 4112 claims as against

Defendants Harman and O'Connell.[4]

None of the claims that Plaintiff has asserted pertain to trade, commerce or monopolies.

Accordingly, this Court finds that 28 U.S.C. § 1337 provides no basis for this Court to exercise

jurisdiction in this case.  See Ali-Bey v. Mountaineer Title Agency, 2010 U.S. Dist. LEXIS

104800, *3 (N.D. Ohio, E.D., September 30, 2010) ("Plaintiff asserts a violation of 28 U.S.C. §

1337 which provides jurisdiction under any Act of Congress regulating commerce or protecting

trade and commerce against restraints and monopolies. Since he has not asserted any such causes

of action or alleged any facts relating to restraints on trade and/or monopolies, this Court has no

jurisdiction under § 1337.").

Thus the only federal predicate establishing this Court's jurisdiction over this cause,

whether it be through 28 U.S.C. § 1331 or 28 U.S.C. § 1343, is 42 U.S.C. 1981

### i.  Subject Matter Jurisdiction Under 42 U.S.C. § 1981 as to Plaintiff's Claims Against Defendants Harman and O'Connell Acting in Their Official Capacity

42 U.S.C. § 1981 provides:

(a) Statement of equal rights. All persons within the jurisdiction of the United
States shall have the same right in every State and Territory to make and enforce
contracts, to sue, be parties, give evidence, and to the full and equal benefit of all
laws and proceedings for the security of persons and property as is enjoyed by
white citizens, and shall be subject to like punishment, pains, penalties, taxes,
licenses, and exactions of every kind, and to no other.

---

[4]  As to Defendants Harman and O'Connell, Plaintiff has asserted two causes of action,
one under 42 U.S.C. §1981 and one under Chapter 4112 of the Ohio Revised Code.  As to
Defendant AFSCME Plaintiff has asserted 29 U.S.C. 185, et seq. and 29 U.S.C. § 401, et seq.
As noted, above, and discussed more fully below, this Court has determined, after a close
reading of Plaintiff's Amended Complaint, that she has not asserted causes of action under 42
U.S.C. §1981 or Chapter 4112 of the Ohio Revised Code as to Defendant AFSCME.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Plaintiff asserts her claims, including her § 1981 claims, against both Defendants Harman and O'Connell "jointly and severally and in their individual supervisory capacities over the Plaintiff." (Plaintiff's Amended Complaint, Docket No. 9, caption page).[5] Allegations made against Plaintiffs Harman and O'Connell acting as supervisors or functioning in their supervisory capacity are synonymous with allegations made against them acting in their official capacities as employees and/or agents of UTMCO.

As employees and/or agents of UTMCO Defendants are, perforce, employees/agents of the State of Ohio, since UTMCO is, as a public institution, an arm of the State of Ohio.  See McCormick v. Miami Univ., 2011 U.S. Dist. LEXIS 48467, *14 (S.D. Ohio, W.D., May 5, 2011) (stating that the University of Miami (Ohio) is "considered an arm of the State of Ohio.").  See also Frank v. Univ. of Toledo, 621 F. Supp. 2d 475, 481 (N.D. Ohio 2007) (Eleventh Amendment analysis implicitly identified the University of Toledo as an arm of the State of Ohio).

The Sixth Circuit has stated, unequivocally, that the Eleventh Amendment "bars all suits,

---

[5]  It is noteworthy that in Plaintiff's original Complaint filed on June 27, 2011 (Docket No. 1) Plaintiff named UTMCO as a Defendant but did not name either Defendant Harman or Defendant O'Connell, although both Harman and O'Connell were referenced in the allegations set forth in the body of the original Complaint.

whether for injunctive, declaratory or monetary relief, against the state and its departments."[6]

Thiokol Corp. v. Dep't of Treas., 987 F.2d 376, 381 (6th Cir. 1993); see also Baba-Singhri v.

Central State Univ., No. 3:03cv429, 2008 U.S. Dist. LEXIS 18355, 2008 WL 656497, at *5 (S.D.

Ohio Mar. 10, 2008) (citing Johnson v. Univ. of Cincinnati, 215 F.3d 561, 571 (6th Cir. 2000));

Adamow v. Miami Univ., No. C-1-05-104, 2007 U.S. Dist. LEXIS 72004, 2007 WL 2886345, at

*9 (S.D. Ohio Sept. 27, 2007).

As a state university the University of Toledo Medical College of Ohio is considered an

arm of the State of Ohio. See Johnson, 215 F.3d at 571; Adamow, No. C-1-05-104, 2007 U.S.

Dist. LEXIS 72004, 2007 WL 2886345, at *9; Frank 621 F. Supp. at 481,  McCormick, 2011 U.S.

Dist. LEXIS 48467, at *14.

As such, the Eleventh Amendment would bar Plaintiff from pursuing § 1981 claims

against UTMCO in federal court. See Johnson, 215 F.3d at 571 (citing Hafford v. Seidner, 183

F.3d 506, 512 (6th Cir. 1999)); Henry v. Ohio Dep't of Mental Retardation & Developmental

Disabilities, 162 F. Supp. 2d 794, 799 (S.D. Ohio 2000); Frank 621 F. Supp. at 481,  McCormick,

---

[6]   United States Constitution, Eleventh Amendment, Suits against states--Restriction of
judicial power:

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

While the Eleventh Amendment does not by its terms bar suits against a state by its own
citizens, an unconsenting state is nevertheless immune from suits brought in federal courts by its
own citizens as well as by citizens of another state. Edelman v Jordan 415 US 651, 39 L Ed 2d
662, 94 S Ct 1347 (1974), reh den, 416 US 1000, 40 L Ed 2d 777, 94 S Ct 2414 (1974). The
basis of the Eleventh Amendment rule that a state may not be sued in federal court by a citizen of
that state, unless the state otherwise consents to suit,  is to be found in Supreme Court precedent.
California v Deep Sea Research, 523 US 491, 140 L Ed 2d 626, 118 S Ct 1464 (1998).

2011 U.S. Dist. LEXIS 48467, at *14.[7]

However, in the Amended Complaint Plaintiff has not asserted § 1981 claims against UTMCO directly (UTMCO is not a named defendant in the Amended Complaint) but against Defendants Harman and O'Connell acting in their official capacity as supervisory employees and/or agents of UTMCO.

The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)

Accordingly Plaintiff's § 1981 action against Defendants Harman and O'Connell acting in their official capacity as supervisory employees and/or agents of UTMCO is a suit against the State of Ohio and, thus, also barred under the Eleventh Amendment.  See McKay v. Thompson, 226 F.3d 752, 757 (6th Cir. 2000) ("[t]he Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities."); Baba-Singhri, No. 3:03cv429, 2008 U.S. Dist. LEXIS 18355, 2008 WL 656497, at *5; McCormick, 2011 U.S. Dist. LEXIS 48467, at *15.[8]

Thus, pursuant to such Eleventh Amendment bar, Plaintiff's § 1981 claims against Defendants Harman and O'Connell acting in their official capacity provide no predicate giving

---

[7]  However, as noted above, Plaintiff has not named UTMCO as a defendant in her Amended Complaint .

[8]  In her Amended Complaint Plaintiff McClair has sought neither current nor prospective injunctive relief as against Defendants Harman or O'Connell.

17

this Court subject matter jurisdiction over this case.

### ii.  Subject Matter Jurisdiction Under 42 U.S.C. § 1981 as to Plaintiff's Claims Against Defendants Harman and O'Connell Acting in Their Individual Capacity

The remaining basis of Plaintiff's 42 U.S.C. § 1981 claim against Defendants Harman and O'Connell is that Defendants committed  § 1981 violations as against Plaintiff while acting in their individual capacities as employees of UTMCO.

Recently, in McCormick v. Miami Univ., supra, the District Court for the Southern District of Ohio analyzed the issue of whether the Eleventh Amendment bars claims against state actors operating in their individual capacities.  Defendants in McCormick argued that employees of a state or an arm of the state (in that case Miami University) could not be sued as state actors under § 1981 either in their official capacity or in their individual capacity.

The District Court based its decision on a close analysis of the Supreme Court's decision in Jett v. Dallas Independent School District, 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).  In Jett the Supreme Court addressed the question of whether 42 U.S.C. § 1981 provides an "independent federal cause of action for damages against local governmental entities, and whether that cause of action is broader than the damages remedy available under 42 U.S.C. § 1983, such that a municipality may be held liable for its employees' violations of § 1981 under a theory of respondeat superior."   Jett, 491 U.S. at 707.

Examining the difference between 42 U.S.C. § 1981 and 42 U.S.C. § 1983, and reviewing the Supreme Court's analysis of these statutes in Jett,  the district court in McCormick noted that § 1981 constitutes a basis of substantive rights but does not expressly include a specific cause of action by which such rights can be protected, whereas § 1983 specifically articulates a cause of

18

action by which an aggrieved party may remedy violations of rights found in other federal laws as

well as the Constitution.  The two statutes also differ in that § 1981 has broader application as it

encompasses both public and private action, while § 1983 is restricted to providing protection as

to violations of federal law committed by persons acting under the color of state law.

McCormick, 2011 U.S. Dist. LEXIS 48467, at 18.  See also Wilson v. Garcia, 471 U.S. 261, 278,

105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985).

      As discussed in McCormick, the Supreme Court in Jett reached the conclusion, after

undertaking a lengthy discussion of the legislative history of §§ 1981 and 1983, that

> In the context of the application of § 1981 . . . to private actors, we had little
> choice but to hold that aggrieved individuals could enforce this prohibition, for
> there existed no other remedy to address such violations of the statute. That is
> manifestly not the case here, and whatever the limits of the judicial power to imply
> or create remedies, it has long been the law that such power should not be
> exercised in the face of an express decision by Congress concerning the scope of
> remedies available under a particular statute.

Jett, 491 U.S. at 731-32. (some internal citations and quotation marks omitted).

      As a result of the Supreme Court's determination in Jett,  federal courts acknowledged

that "even though § 1981 creates an implicit cause of action against private defendants, state

actors . . . may not be sued directly under that statute." Arendale v. City of Memphis, 519 F.3d

587, 594 (6th Cir. 2008).

      However, subsequent to the Court's 1989 decision in Jett Congress enacted the Civil

Rights Act of 1991, which, inter alia, added two new subsections to § 1981, including subsection

(b) Protection against impairment, which reads, "[t]he rights protected by this section are

protected against impairment by nongovernmental discrimination and impairment under color of

State law."  42 U.S.C. § 1981(c).

19

The district court in <u>McCormick</u> then proceeded to analyze the effect that the 1991 amendment to § 1981 had on the Supreme Court's decision in <u>Jett</u>.

It is beyond the scope of this Report to reiterate the district court's analysis in <u>McCormick</u>.  Suffice it to say that one of the  primary considerations underlying the rationale for the court's analysis in <u>McCormick</u> was the recognition that, regardless of whether a state employee was being sued in his official capacity or in his individual capacity, the more fundamental category by which to distinguish the defendant's status under § 1981 was that the defendant was being sued as a state actor.  "<u>Jett</u> applied not only to governmental units, but also to individuals, whether sued in their official or individual capacities, who qualify as 'state actors.'"  <u>McCormick</u>, 2011 U.S. Dist. LEXIS 48467, at *31; <u>referring to</u>  <u>Felton, v. Polles</u>, 315 F.3d 470, 482 (5th Cir.2002).[9]. "[S]tate employment is generally sufficient to render the defendant a state actor.'" <u>Id</u>. (<u>quoting</u> <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 935 n.18, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982))

Analyzing the effect of the 1991 amendment on the Supreme Court's <u>Jett</u> decision as it applied to § 1981 claims against state employees sued in their individual capacities the court concluded that "as discussed below, this Court believes that the reasoning behind the Supreme Court's opinion in <u>Jett</u> [-] that state actors may not be sued directly under § 1981 [-] applies with equal force to official capacity <u>and individual capacity claims</u>." <u>McCormick</u>, 2011 U.S. Dist. LEXIS 48467, at *27. (emphasis added).

This Court finds that it would be illogical to conclude that <u>Jett</u> would bar plaintiffs from suing governmental units and state actors in their official capacities directly

---

[9]  <u>Felton</u> was abrogated on other grounds by <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

under § 1981, but would not bar such claims against individuals who otherwise
qualify as state actors but are sued in their individual capacities. The reasoning
upon which the Supreme Court based its opinion in <u>Jett</u> applies with equal force to
individual capacity claims.

<u>McCormick</u>, 2011 U.S. Dist. LEXIS 48467, at *32.[10]

The district court in <u>McCormick</u>  undertook its analysis of the Eleventh Amendment bar to

§ 1981 claims against state employees in their individual capacity from the vantage point of Fed.

R. Civ. Pro. 12(b)(6).   It is the opinion of this Court that the Eleventh Amendment preclusion of

actions based on § 1981 as against state employees in their official capacity applies equally to

§1981 actions against state employees in their individual capacities such that not merely does

Plaintiff fail to state a claim but Plaintiff also fails to meet the subject matter jurisdiction

threshold.

Accordingly, this Court finds that it lacks subject matter jurisdiction over Plaintiff's §1981

claims against Defendants Harman and O'Connell acting in their individual capacities.

### iii.  42 U.S.C. § 1981 and Defendant AFSCME

The Court now turns to the question of whether Plaintiff has a 42 U.S.C. § 1981 claim

against Defendant AFSCME.

At the outset it should be noted that a close review of Plaintiff's Amended Complaint

---

[10]   The district court noted that its holding did not necessarily mean that a plaintiff could
never sue a state employee under § 1981 merely because that person happened to be a state
employee, noting that there could be "cases in which a plaintiff seeks to hold a state employee
liable for alleged violations of § 1981 that are completely attenuated from the defendant's status
as a state employee, such as where the alleged violations occurred in the context of the
defendant's private side-business. However, where, as here, the plaintiff attempts to hold state
employees liable for actions taken in the context of and under authority derived from their state
employment, the proper remedial scheme is § 1983."  <u>McCormick</u>, 2011 U.S. Dist. LEXIS
48467, at *33.-*34.

21

includes no statement that Plaintiff's grievances against or concerns about her treatment by the union involved issues related to discrimination.

Plaintiff sets forth her allegations against Defendants Harman and O'Connell in ¶¶ 1 through 15 of her Amended Complaint.  At ¶ 10 of her Amended Complaint, in the section entitled "Factual Allegations," after recounting her dealings with UTMCO and Defendants Harman and O'Connell in the preceding paragraphs, Plaintiff states: "That upon learning of this ruse, the Plaintiff attempted to return to her job but was informed that if she was to 'set foot' on the campus, that she would be subjected to being arrested."  (Docket No. 9, p. 6)  At ¶ 11 Plaintiff then states, "That the Plaintiff was denied a chance to return to her work due to her race being a factor."  Id.

Plaintiff next proceeds to assert her claims against Defendant AFSCME in a sub-section of her Amended Complaint entitled "Allegations Regarding Labor Union."[11]  Plaintiff lays out her allegations against Defendant AFSCME in ten paragraphs.  At ¶ 5 of that sub-section of her Amended Complaint Plaintiff states: "That the union consistently failed to provide relief or remedy to the Plaintiff and failed to provide representation to her of any real substance and failed to advocate on her behalf against the employer."  (Docket No. 9, p. 8).  At ¶ 6 of that sub-section Plaintiff states that the Defendant AFSCME "procrastinated and failed to protect her from the unwarranted allegations that the employer accused the Plaintiff of committing."  Id.  At ¶ 7 Plaintiff accuses Defendant AFSCME of breaching their "constitutional duty of fair and adequate

---

[11]  Plaintiff introduces the sub-section of her Amended Complaint, wherein she asserts her claims against Defendant AFSCME, with the standard formalism that she "incorporates herein the above averments herein as if fully rewritten . . . " (Docket No. 9, p. 7).  Only in this oblique, formulaic and non-specific way is any reference to race or discrimination included in the sub-section of her Amended Complaint, setting forth averments against Defendant AFSCME.

representation."  Id.  At ¶ 8 she states that she would not have suffered a job loss had the union

"aggressively fought for her as promised."  Id.  At ¶ 9 she accuses the union of being "of little

help" in her battle.  (Docket No. 9, p. 9).

       Plaintiff certainly alleges that Defendant AFSCME failed her in various ways, however

Plaintiff does not allege or even insinuate that such alleged failures on the part of AFSCME

involved any form of discrimination.  As noted in footnote 11, below, Plaintiff did precede the

sub-section of her Amended Complaint containing her allegations against Defendant AFSCME

with the phrase  "incorporates herein the above averments herein as if fully rewritten . . . "

(Docket No. 9, p. 7).  This introductory statement represents no more than a standardized

formalism of complaint construction and does not reach to the heart of the issue discussed: i.e.,

whether it is reasonable to read Plaintiff's Amended Complaint as setting forth allegations of

discrimination against Defendant AFSCME.  A fair and thorough reading of Plaintiff's Amended

Complaint finds no such claims.

       In fact the closest Plaintiff comes to connecting, obliquely or indirectly, Defendant

AFSCME to a discrimination claim is that she refers to § 1981 in the jurisdictional preamble of

her pleading.

       Equally telling is that in her jurisdictional statement Plaintiff writes: "This is an action

authorized pursuant to 42 U.S.C. Section 1981 known as the Civil Rights Acts of 1866, 1870 and

1881 and as amended providing for declaratory and injunctive relief against discrimination in

employment on the basis of sex and race . . ."  (Docket No. 9, p. 2) (emphasis added).

       Additionally, in the Memorandum of Support in her Motion Opposing Dismissal Plaintiff

refers to the alleged racial discrimination of Defendants Harman and O'Coinnell stating: that she

did "allege racial discrimination against the actors in that she was given trumped up reasons for her dismissal" (Docket No. 19, p. 6).  "Both named individual Defendants acted in concert in denying and depriving the Plaintiff of her right to be free from racially based or racially motivated discriminatory acts." Id.  "Both named parties, individually and jointly, did engaged [sic] in . . . . acts . . . and race being a factor in that committed adverse job act(s) or actions against the Plaintiff." Id.  "Section 1981 prohibits individuals, including **other employees,** (emphasis added by author) from racial discrimination against an employee."  (Docket No. 19, p. 7).  (emphasis original).  Nowhere in her Motion Opposing does Plaintiff refer, allude to, or insinuate a discrimination claim against Defendant AFSCME.

Accordingly, this Court concludes that Plaintiff has not asserted a 42 U.S.C. § 1981 claim as against Defendant AFSCME.

Thus after a thorough review of Plaintiff's Amended Complaint, the bases upon which she asserts jurisdiction and the various laws that she claims were violated this Court finds that there is no basis upon which it can assume jurisdiction over this cause.

### 6.  Jurisdiction through Chapter 4112 of the Ohio Revised Code

Chapter 4112 of the Ohio Revised Code (effective July 29, 1959) is a legislative mandate enacted by the Ohio General Assembly creating a Civil Rights Commission in the State of Ohio for the purpose of providing protections against and remedies for unlawful discriminatory practices.  See R.C. § 4112.02.  Chapter 4112 sets forth procedures by which grievances may be addressed, including procedures by which grievances may be presented to the Ohio Civil Rights Commission.  See. R.C. § 4112.05. See also § 4112-3-1 of the Ohio Administrative Code, prescribing the mechanism by which charges of discrimination may be presented to the Ohio

24

Civil Rights Commission as well as other agencies, including, the Equal Employment

Opportunity Commission.

Additionally, under certain circumstances, a R.C. Chapter 4112 claimant may proceed to

have his grievance adjudicated in the state courts.   See Dworning v. City of Euclid, 2006 Ohio

App. LEXIS 6685, 2006 Ohio 6772, (2006), affirmed by 119 Ohio St. 3d 83, 2008 Ohio 3318,

892 N.E.2d 420, 2008 Ohio LEXIS 1768, 13 Accom. Disabilities Dec. (CCH) P13-144, 20 Am.

Disabilities Cas. (BNA) 1384 (2008). (discharged fire chief who sued a city for disability

discrimination under RC § 4112.99 did not have to exhaust administrative remedies in the city's

civil service commission as a predicate to filing suit in state court).

However, as a legislative mandate of the State of Ohio, Chapter 4112 does not provide a

basis upon which this Court may assume original, subject matter jurisdiction over this case.

> [Plaintiff] also brings claims under Ohio Rev. Code §§ 4112.01 and 4112.99, as
> well as Ohio common law prohibiting discharge from employment in violation of
> public policy. Subject matter jurisdiction in this case was based on the existence of
> a federal question. This Court had jurisdiction over [plaintiff's] state law claims
> only because they were so related to her federal law claims that they were part of
> the same case or controversy. 28 U.S.C. § 1367(a) (defining the court's
> "supplemental" jurisdiction).  . . . ., a district court may decline to exercise
> supplemental jurisdiction if the federal claims over which it had original
> jurisdiction have been dismissed. "If the federal claims are dismissed before trial,
> … the state claims should be dismissed as well." United Mine Workers v. Gibbs,
> 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); see also Williams v.
> City of River Rouge, 909 F.2d 151, 157 (6th Cir. 1990)

Bielawski v. AMI, Inc., 870 F. Supp. 771, 776 (N.D. Ohio, E.D. 1994). (some citations omitted).

"When all the federal claims in a case have been dismissed, there is a strong  presumption

in favor of dismissing any remaining state law claims unless the plaintiff can establish an

alternate basis for federal jurisdiction."  Bishop v. Children's Ctr. for Developmental Enrichment,

618 F.3d 533, 539 (6th Cir. 2010).  Supplemental jurisdiction is discretionary, not mandatory. See

Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010)

As this Court has concluded that none of the federal law claims that Plaintiff has asserted provide subject matter jurisdiction, this Court does not have jurisdiction over Plaintiff's state law claims alleging of violations §§ 4122.01 through 4122.99 of the Ohio Revised Code.

### 7.  Miscellaneous

As this Court has found that Plaintiff has failed to present in her Amended Complaint any claims over which this Court has original subject matter jurisdiction it need not address the arguments put forward by Defendants in the Rule 12(b)(6) portions of their Motions to Dismiss as the matters raised in those portions of Defendants' Motions are moot.   Additionally, it is unnecessary for this Court to adjudicate other issues, e.g., other appropriate fora or exhaustion of remedies arguments, discussed by Defendants in their Motions.

## V.  Conclusion

For these reasons, the Magistrate recommends that the Court Grant Defendants Harman's and O'Connell's Motion to Dismiss Plaintiff's Amended Complaint; the Magistrate further recommends that the Court Grant the Motion to Dismiss Amended Complaint by Defendant American Federation of State, County and Municipal Employees, Local, 2415, AFL-CIO; and the Magistrate further recommends that Plaintiff's Amended Complaint be Dismissed and that the referral be terminated.

_s/  Vernelis K. Armstrong_
VERNELIS K. ARMSTRONG
UNITED STATES MAGISTRATE JUDGE

Date:   March 22, 2012

**VI.  Notice**

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the local rules for northern district of Ohio, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in United States v. Walters, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In Thomas v. Arn, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

27